IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**CHARLES HOWLEY**,                    §
                                      §
        Plaintiff,                    §
                                      §
v.                                    §        Civil Action No. **3:19-CV-2477-L**
                                      §
**BANKERS STANDARD INSURANCE**        §
**COMPANY**,                          §
                                      §
        Defendant.                    §

## MEMORANDUM OPINION AND ORDER

Before the court are Plaintiff's Emergency Motion to Alter or Amend a Judgment (Doc. 15), filed pursuant to Federal Rule of Civil Procedure 59(e), on August 18, 2020; Plaintiff's Motion for Leave to file Second Amended Complaint (Doc. 23), filed September 11, 2020; and Bankers Standard Insurance Company's Motion for Leave to File a Surreply (Doc. 29), filed October 21, 2020. After considering the motions and applicable law, and revisiting the pleadings, file, and the record in this case, the court **denies** Plaintiff's Emergency Motion to Alter or Amend a Judgment under Rule 59(e) (Doc. 15); **denies** Plaintiff's Motion for Leave to file Second Amended Complaint (Doc. 23); and **denies as moot** Bankers Standard Insurance Company's Motion for Leave to File a Surreply (Doc. 29).

## I.      Factual and Procedural Background

Charles Howley ("Mr. Howley" or "Plaintiff") originally filed this action on September 24, 2019, in County Court at Law No. 1, Dallas County, Texas, against Bankers Standard Insurance Company ("Bankers Standard" or "Defendant"), asserting claims for breach of contract, alleged violations of the Texas Deceptive Trade Practices Act ("DTPA"), breach of the common law duty of good faith and fair dealing, breach of the Texas Prompt Payment Act, breach of express or

implied warranty, and fraud based on alleged fraudulent inducement pertaining to his home insurance policy with Bankers Standard ("Policy"). Mr. Howley's claims arise from Bankers Standard's allegedly wrongful denial or underpayment of the claim he submitted to recover benefits under the Policy after a June 2019 wind and hail storm in Dallas County. Mr. Howley asserts that the storm caused extensive damage to the roof of his home and these damages are covered under his Policy. In his Original Petition, Mr. Howley prayed to recover monetary damages in excess of $200,000, treble damages, punitive or exemplary damages, attorney's fees, and costs of suit.

On October 18, 2019, Bankers Standard removed the action to federal court based on diversity jurisdiction. Bankers Standard then moved on October 25, 2019, to dismiss all of Plaintiff's claims under Federal Rules of Civil Procedure 12(b)(6) and 9(b) for failure to state a claim upon which relief can be granted (Doc. 5). Before responding to the motion to dismiss, Plaintiff, on November 8, 2019, filed his First Amended Complaint (Doc. 7), which he was entitled to do as a matter of course without leave of court under Federal Rule of Civil Procedure 15(a)(1)(B). Less than one hour later, Plaintiff also filed a response to Defendant's motion to dismiss the claims in his Original Petition, but he did not expressly seek leave to further amend his pleadings in the event the court determined that dismissal of one or more of his claims was warranted under Rule 12(b)(6) or Rule 9(b). He, instead, maintained that Defendant's motion to dismiss his Original Petition should be denied because the allegations in his First Amended Complaint were sufficient to satisfy Rule 12(b)(6) and Rule 9(b). In other words, Plaintiff took the position that the amendments to his pleadings, as set forth in his First Amended Complaint, cured the deficiencies previously identified by Defendant.[1]

---

[1] Despite this argument, Plaintiff's November 8, 2019 response creates confusion by also referencing his Original Petition. *See* Pl.'s Resp. 3 & n.9 (citing Pl.'s Orig. Pet. ¶¶ 17-20); *see also* Pl.'s Resp. 8 ("The allegations as set forth

Defendant disagreed and filed its Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 9) on November 20, 2019. Plaintiff did not file a separate response in opposition to Defendant's Motion to Dismiss his First Amended Complaint.  In light of Plaintiff's First Amended Complaint and Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, the court, on January 8, 2020, denied as moot Defendant's original motion to dismiss. *See* Doc. 11.  Thereafter, Plaintiff did not seek leave to file an out-of-time response to Defendant's Motion to Dismiss his First Amended Complaint; nor did he request that the court consider his prior response to Defendant's now-moot original motion to dismiss in ruling on Defendant's Motion to Dismiss the claims pleaded in his First Amended Complaint.

On August 14, 2020, the court granted Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, dismissed with prejudice all claims asserted by Plaintiff, and entered judgment in favor of Bankers Standard (Docs. 12-13).  In its Memorandum Opinion and Order, dated August 14, 2020 (Doc. 12), the court determined, based on the applicable standard under Federal Rule of Civil Procedure 15(a), that Plaintiff should not be allowed to further amend his pleadings, as he had not responded to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint or sought leave to further amend his pleadings. The court also noted that the allegations in Plaintiff's First Amended Complaint were substantially similar to those in his Original Petition and did not offer needed clarity regarding his claims. The court, therefore, determined that Mr. Howley had stated his best case such that further attempts at amendment would be futile and unnecessarily delay the resolution of this litigation.

---

in *Plaintiff's Original Petition*, if taken as true, would establish a claim for fraud and/or misrepresentation as required by Rule 9(b).") (emphasis added).  The court, nevertheless, assumes for purposes of ruling on Plaintiff's pending motions that these references to the allegations in Plaintiff's Original Petition were inadvertent and intended to refer to the allegations in his First Amended Complaint.

**Memorandum Opinion and Order – Page 3**

A few hours after the court's Memorandum Opinion and Order and Judgment were docketed on August 14, 2020, Plaintiff's counsel telephoned the court's staff, expressing concern that the response he filed to Defendant's original motion to dismiss was not considered by the court in ruling on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. The court entered an order (Doc. 14) explaining that the appropriate way to bring this concern to its attention was to file a motion to amend or alter the judgment as provided in Federal Rule of Civil Procedure 59(e). Four days later on August 18, 2020, Plaintiff filed his Emergency Motion to Alter or Amend a Judgment pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 15).

In his Rule 59(e) motion, Plaintiff requests to amend his pleadings and contends that dismissal with prejudice of his $220,628.92 insurance claim, without granting him leave to amend, would be unprecedented given the facts of this case and amounts to error.  Plaintiff, therefore, "asks the Court to correct this error and grant [him] leave to amend." Pl.'s Br. 11 (Doc. 16).  For support, Plaintiff summarizes the allegations in his First Amended Complaint in an *apparent* effort to address for the first time some of the arguments raised in Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.  In addition, Plaintiff states in a footnote that "Dallas Cowboys linebacker Chuck Howley (Super Bowl V) is the only player to be voted the Super Bowl MVP from a losing team," and provides an internet link to a February 2020 Washington Post newspaper article.  Pl.'s R. 59(e) Mot. 5 & n.1.[2]  Plaintiff also references his Rule 59(e) motion

---

[2] While the court agrees with this statement, it also agrees with Defendant that this fact is totally irrelevant to whether Plaintiff is entitled to relief under Federal Rules of Civil Procedure 59(e) or 15(a). *Moreover, the court finds the reference to Mr. Howley's prowess as a former player of the Dallas Cowboys puerile and inappropriate. It is not clear whether the injection of information regarding Mr. Howley's success as a football player was his idea or a last-minute act of desperation by his attorney in an effort to do now what he should have done before entry of judgment to prosecute his client's claims in this action. Regardless, the undersigned took an oath that he would administer justice "without respect to persons" and "do equal right to the poor and to the rich." The undersigned grew up as a fan of Mr. Howley; however, he remains committed to his oath, and the status or position of Mr. Howley plays no role in this opinion. Like an umpire or referee, the court makes calls based on the applicable rules of the game.*

**Memorandum Opinion and Order – Page 4**

and attaches to the motion copies of his Policy and a July 2, 2019 denial of benefits letter from Bankers Standard.

Plaintiff asserts that, contrary to the court's Memorandum Opinion and Order, he "did respond to Defendant's motion" to dismiss. *Id.* at 5 (citing Pl.'s Resp. (Doc. 8)). Plaintiff further asserts that the response he filed to Defendant's motion to dismiss his Original Petition references his First Amended Complaint. Plaintiff contradicts himself by contending, on one hand, that he "did respond to Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint." *Id.* at 10. On the other hand, Plaintiff acknowledges that the response he filed on November 8, 2019, was to Defendant's original motion to dismiss [Doc. 8], not Defendant's Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 9] that was subsequently filed on November 20, 2019, after Plaintiff filed his response and First Amended Complaint. *Id*. at 5. According to Plaintiff, "[f]iling a second response to Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint would have been superfluous and inundated the court with duplicative responses addressing the same issue analyzed in [Doc. 8]." *Id.*

Before the Rule 59(e) motion was ripe, Plaintiff's counsel contacted the court's staff again on September 2, 2020, inquiring about the status of the motion. In response, the court entered another order explaining that it intended rule on Plaintiff's Rule 59(e) motion in the ordinary course of business after Defendant had an opportunity to respond and the motion was ripe. The court further explained that Defendant's response to the motion was not due until September 8, 2020. In addition, the court noted that, while Plaintiff's motion was filed as an Emergency Motion, no justification was provided that would warrant expedited consideration of the motion, and counsel's concern and stated reason for inquiring about the status of the motion—his belief that the court would lose plenary power in approximately two weeks—was based on the incorrect

assumption regarding the court's jurisdiction and authority to address postjudgment motions under Rule 59(e) and, thus, not a valid basis for expediting consideration of his motion or prioritizing it over older motions and cases pending before the court, including criminal matters that take precedence over civil actions.[3]

On September 9, 2020, Bankers Standard filed its response in opposition to Plaintiff's Rule 59(e) motion (Doc. 19), contending that Mr. Howley has not satisfied the requirements for relief under that rule. Bankers Standard further contends that Plaintiff should not be allowed to further amend his pleadings because he did not respond to its Motion to Dismiss his First Amended Complaint; Plaintiff's response to Defendant's motion to dismiss the claims in his Original Petition did not rectify the deficiencies in his pleadings; and providing him with another opportunity to amend would be futile given his failure, to date, to come forward with sufficient factual allegations to satisfy his pleading burden.  Bankers Standard, therefore, argues that Mr. Howley's response to its original motion to dismiss contains nothing that would have affected the court's analysis and ruling on its Motion to Dismiss Plaintiff's First Amended Complaint.

On September 10, 2020, in an attempt to address Defendant's argument that he has yet to identify or plead sufficient facts to satisfy his pleading burden and warrant amendment, Mr.

---

[3] Moreover, the flurry of activity caused by this filing and Plaintiff's other postjudgment filings that are discussed herein unnecessarily delayed the resolution of his requests for relief, which were trotted out seriatim in the same "shotgun" and unorganized fashion as his prior pleadings and filings. Instead of taking the effort necessary to prepare and file well-drafted pleadings and motions supported by fact and law, Plaintiff's filings appear to have been thrown together in a disorderly fashion with the belief that the court would be able to sort out the disarray and make sense of claims and arguments asserted. Only after Defendant pointed out the deficiencies in Plaintiff's prejudgment and posjudgment filings each time, and after the court dismissed this action, did Plaintiff jump into action in an attempt to cure the deficiencies noted. Even then, however, the way in which Plaintiff attempted to cure deficiencies by filing new motions, filing pleadings without leave of court, and raising new arguments in issues in a reply brief and postjudgment motions has wreaked havoc on the proceedings in this case.  As a result, the court has had to enter four orders since the entry of judgment on August 14, 2020, in addition to this lengthy memorandum opinion and order, to address Plaintiff's hasty postjudgment filings, status requests, and noncompliance with the district's Local Civil Rules and Federal Rules of Civil Procedure. The court mentions this here because it appears to be an unacceptable pattern of behavior, as this is not the only case pending before the court in which Plaintiff's attorney has engaged in the same disruptive style of advocacy, taking a "wait-and-see" approach, instead of proactively representing his clients and complying with applicable rules.

**Memorandum Opinion and Order – Page 6**

Howley, rather than filing a reply in support of his Rule 59(e) motion, filed another emergency motion. In his second emergency motion, Mr. Howley seeks leave under Rule 15(a) to file a second amended complaint (Doc. 20). On the same date, before the court could rule on the motion for leave, Mr. Howley filed his Second Amended Complaint (Doc. 21).

On September 11, 2020 (Doc. 22), the court filed an order striking Plaintiff's Second Amended Complaint, as it was filed before Mr. Howley obtained a ruling on his motion for leave, and it was not filed as an attachment to his motion for leave in accordance with this district's Local Civil Rule 15.1(b). The court, therefore, directed Mr. Howley to refile, by September 15, 2020, his proposed Second Amended Complaint as an exhibit to his motion for leave in accordance with Local Civil Rule 15.1(b).

A few hours after entry of the court's September 11, 2020 order, Plaintiff filed another emergency motion for leave to which he attached as an exhibit his proposed Second Amended Complaint (Docs. 23, 23-1) .[4]  Despite his prior belief that his First Amended Complaint set forth his "best case," Plaintiff now asserts in his motion for leave that his "best case is set forth in [his] Second Amended Complaint."  Pl.'s Mot. for Leave 2 (Doc. 23).  Plaintiff's Second Amended Complaint does not include his previously asserted breach of warranty and fraud claims, which, according to Plaintiff, are "voluntarily nonsuited to be rehashed later after the facts of the case are developed through discovery."  *Id.*  Because Plaintiff's second emergency motion for leave appears to be identical to his earlier motion for leave, the court denied as moot the earlier-filed motion for leave on September 14, 2020.

---

[4] On September 11, 2020, Plaintiff also filed a notice of appeal (Doc. 24) with respect to the court's August 14, 2020 Memorandum Opinion and Order and Judgment.

**Memorandum Opinion and Order – Page 7**

Defendant filed a response in opposition to Plaintiff's second emergency motion for leave on October 1, 2020 (Doc. 27), contending, among other things, that Plaintiff failed to confer before filing his motion for leave as required by the Local Civil Rules.[5]  Plaintiff's second emergency motion for leave became ripe after Plaintiff filed his reply in support of that motion on October 7, 2020 (Doc. 28).  Although styled as a motion for leave to amend his pleadings under Rule 15(a), Plaintiff argues in his reply that the court's decision to dismiss with prejudice this action without granting him leave to further amend amounted to a manifest error of law or fact "because Rule 15(a) states that leave to amend 'shall be freely given when justice so requires.'" Pl.'s Mot. for Leave 2 (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863 (5th Cir. 2003)).  Plaintiff further asserts, based on Texas case law, that "constitutional imperatives favor the determination of cases on their merits rather than on harmless procedural defaults."  *Id.* at 3 (citing *Marino v. King*, 355 S.W.3d 629, 634 (Tex. 2011)).

On October 21, 2020, Defendant moved for leave (Doc. 29), requesting permission to file a surreply to address new issues raised in Plaintiff's reply. Alternatively, Defendant requests that the court strike Plaintiff's reply on the ground that it exceeds the matters in its response. Plaintiff did not respond to Defendant's motion for leave.  As a result, Defendant's motion for leave became ripe for resolution on November 12, 2020.

For the reasons that follow, the court determines that Plaintiff has not established his entitlement to relief under either Rule 59(e) or Rule 15(a), and his contentions regarding the response he filed Defendant's original motion to dismiss do not persuade the court otherwise.

---

[5] The court does not address this contention in detail, except to note that this district's Local Civil Rules do not require that a certificate of conference accompany a motion for new trial. As Plaintiff's Motion for Leave to file Second Amended Complaint (Doc. 23) is a postjudgment motion in which Plaintiff contends that the court erred in not allowing him to further amend his pleadings before dismissing his claims with prejudice, the court determines that no certificate of conference was required for the same reasons none is required for a motion for new trial.

## II.   Effect of Not Considering Plaintiff's Response in Ruling on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and Dismissing With Prejudice Plaintiff's Claims Under Rules 12(b)(6) and 9(b)

Although he does not do so expressly, Mr. Howley impliedly argues in his Rule 59(e) motion that the court erred in granting Defendant's Motion to Dismiss the claims in his First Amended Complaint under Rule 12(b)(6) and Rule 9(b).  He does so by devoting most of his Rule 59(e) motion to summarizing the allegations in his First Amended Complaint and contending that his response only referenced his First Amended Complaint. Mr. Howley also disputes the court's determination and Bankers Standard's contention that he did not respond to Defendant's Motion to Dismiss his First Amended Complaint. He repeatedly asserts in his Rule 15(a) and 59(e) motions and briefing that he did in fact respond to "Defendant's motion" while *conflating* the difference between the two motions.

Thus, it appears from the emphasis on and import attributed by Mr. Howley to the allegations in his First Amended Complaint and his response to Defendant's original motion to dismiss that he believes that the court incorrectly determined that he did not file a response to Defendant's Motion to Dismiss his First Amended Complaint, and this in turn affected the court's decision to not allow him to further amend his pleadings, as well as its decision to dismiss his claims under Rule 12(b)(6) and Rule 9(b).  Before reaching Plaintiff's postjudgment request to amend his pleadings, based on his contention that the court erred in not allowing him to further amend his pleadings before entry of judgment, the court addresses whether consideration of Plaintiff's response to Defendant's original motion to dismiss would have affected its decision to grant Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and dismiss with prejudice all of the Plaintiff's claims under Rule 12(b)(6) and Rule 9(b).  Rule 59(e) applies to this

issue because Mr. Howley filed his Motion to Alter or Amend a Judgment less than 28 days after the court's dismissal with prejudice of this action and entry of judgment.

### A.      Rule 59(e) Legal Standard

A motion to alter or amend the judgment under Rule 59(e) "calls into question the correctness of a judgment." *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (citation omitted). Such motion "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Marseilles Homeowners Condominium Ass'n Inc. v. Fidelity Nat'l Ins. Co*., 542 F.3d 1053, 1058 (5th Cir. 2008) (citation omitted). It may not be used to relitigate issues that were resolved to the movant's dissatisfaction. *Forsythe v. Saudi Arabian Airlines Corp*., 885 F.2d 285, 289 (5th Cir. 1989). A Rule 59(e) motion may not raise arguments or present evidence that could have been raised before entry of judgment. *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citation omitted). When considering a Rule 59(e) motion to reconsider, a court may not grant such a motion unless the movant establishes: "(1) the facts discovered are of such a nature that they would probably change the outcome; (2) the alleged facts are actually newly discovered and could not have been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or impeaching." *Infusion Res., Inc. v. Minimed, Inc*., 351 F.3d 688, 696-97 (5th Cir. 2003). "Relief under Rule 59(e) is also appropriate when there has been an intervening change in the controlling law." *Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563, 567 (5th Cir. 2003).

District courts have "considerable discretion in deciding whether to grant or deny a motion to alter a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995). In exercising this discretion, a district court must "strike the proper balance between the need for finality and the need to render just decisions on the basis of all the facts." *Id.* With this balance in mind, the Fifth

Circuit has observed that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *Southern Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). Stated another way, "[r]econsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004) (citations omitted).

    **B.**     **Discussion**

        **1.**     **Plaintiff's Response to Defendant's Motion to Dismiss His Original Petition Cannot Plausibly be Considered a Response to Defendant's Motion to Dismiss His First Amended Petition.**

    Plaintiff contends that the response he filed was to Defendant's original motion to dismiss is also responsive to the arguments asserted in Defendant's subsequently filed Motion to Dismiss his First Amended Complaint because it references the pleadings in his First Amended Complaint. The logic in this argument is fundamentally flawed for a couple of reasons. In actuality, the response filed by Plaintiff is not responsive to either of the motions to dismiss filed by Defendant.

    Defendant's original motion to dismiss addressed the deficiencies in Plaintiff's Original Petition. Instead of addressing the arguments raised by Defendant regarding the sufficiency of the allegations in his Original Petition, Plaintiff contends in his response that his claims as pleaded in his First Amended Complaint are adequate. Plaintiff also fails to explain why it should have been obvious to the court that the response he filed on November 8, 2019 (Doc. 8), was also responsive to or intended to respond to Defendant's Motion to Dismiss the claims alleged in his First Amended Complaint, which was not filed until November 20, 2019, *after* Plaintiff filed his response.

    Regardless, the arguments in Defendant's original motion to dismiss and Plaintiff's response to that motion were mooted as a result of Plaintiff's decision to file his First Amended Complaint and Defendant's Motion to Dismiss the claims in the First Amended Complaint. To avoid confusion, the court entered an order on January 8, 2020, stating as much when it denied as

**Memorandum Opinion and Order – Page 11**

moot Defendant's original motion to dismiss in light of Plaintiff's First Amended Complaint and Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. This order was entered ***eight months*** before the court ruled on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and entered judgment in Defendant's favor in August 2020.

During this eight-month period, Plaintiff never sought leave to respond to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint; nor did he notify or request the court to consider his November 8, 2019 response to Defendant's original motion to dismiss in ruling on Defendant's Motion to Dismiss his First Amended Complaint. Further, Plaintiff never requested to supplement his prior response, before entry of judgment, with the arguments and information he now insists establish his claims. The briefing submitted by Plaintiff in support of his postjudgment motions consists of approximately twenty pages and far exceeds the six and one-half-page response that he filed to Defendant's original motion to dismiss. It also contains arguments and citations to legal authority that were not made in his prior response. Plaintiff does not argue that this information did not previously exist, and he does not explain why he could not have supplemented his prior response before judgment was entered with the arguments, legal authority, and information he now seeks to have the court consider. Accordingly, the new arguments, evidence, and legal authority that Plaintiff now relies on cannot support the relief requested under Rule 59(e), and the court does not consider it in assessing whether any error occurred as a result of its granting Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and dismissing Plaintiff's claims with prejudice, or deciding to not allow Plaintiff to further amend his pleadings prior to entry of judgment.

2.    **Consideration of Plaintiff's Response Establishes Waiver and Abandonment of Many Issues and All Claims, Except Plaintiff's DTPA Claim.**

Even if the court had considered Plaintiff's November 8, 2019 response in ruling on Defendant's Motion to Dismiss his First Amended Complaint, the court agrees with Defendant that it would not change the outcome of the court's decision.  Instead, consideration of Plaintiff's November 8, 2019 response seriously undermines the relief he now seeks and lends further support to the court's decision to grant Defendant's motion and dismiss his claims with prejudice without allowing him to further amend his pleadings. This is so because Mr. Howley's response establishes that he waived many of the issues urged in Defendant's Motion to Dismiss his First Amended Complaint by failing to address them, and he abandoned many of his claims by not defending them in response to Defendant's Motion to Dismiss his First Amended Complaint.

Like its original motion to dismiss, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint included separate arguments for why Bankers Standard believed that each of the six causes of action asserted by Mr. Howley in his First Amended Complaint should be dismissed.  Plaintiff's response, however, only addressed Defendant's contention that his cause of action for fraud under Texas law and DTPA claim, based on alleged violations of the Texas Insurance Code, were not sufficiently pleaded for purposes of Rule 9(b), and it only did so at a high level without actually responding to Defendant's precise arguments regarding the various deficiencies identified in Plaintiff's First Amended Complaint.  In doing so, Mr. Howley waived these issues. *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (explaining that inadequately briefed issues are considered waived); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue."), *aff'd sub nom.*, *Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) (citations omitted).

**Memorandum Opinion and Order – Page 13**

Additionally, because Mr. Howley did not address the arguments in Defendant's Motion to Dismiss his First Amended Complaint regarding his other claims, he effectively abandoned these claims.  Mr. Howley makes a passing reference to his cause of action for breach of the duty of good faith and fair dealing in the first sentence of his response, but he failed to defend this claim by responding to Bankers Standard's argument for moving to dismiss it. Mr. Howley never mentions his claims for breach of contract, breach of warranty, or alleged violations of the Texas's Prompt Payment Act.  Similarly, Mr. Howley acknowledges that Rule 9(b) applies to common law fraud claims like the one he has asserted in this action against Bankers Standard, but he never actually explains how or why he believes that the allegations in his First Amended Complaint satisfy Rule 9(b)'s heightened pleading requirement or the elements of fraud under Texas law. Instead, he merely asserts in conclusory fashion at the end of his response that "[t]he allegations as set forth in Plaintiff's Original Petition, if taken as true, would establish a claim for fraud and/or misrepresentation as required by Rule 9(b)." Pl.'s Resp. 7 (Doc. 8). Consequently, Plaintiff waived or abandoned his claims for fraud; breach of the duty of good faith and fair dealing; alleged violations of the Texas Prompt Payment Act; breach of contract; and breach of express or implied warranty. *See Black v. North Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (concluding that the plaintiff's failure "to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss" and "her failure to pursue this claim beyond her complaint constituted abandonment" of the claim) (citation omitted).

By asserting in his postjudgment motions that his "breach of warranty and fraud claims are voluntarily nonsuited to be rehashed later after the facts of the case are developed through discovery," Plaintiff has essentially conceded that the fraud and warranty claims in his First Amended Complaint were insufficiently pleaded.  Pl.'s Mot. for Leave 2 (Doc. 23).  Plaintiff,

however, did not ask to amend his pleadings as to these or any of his other claims in the event the court determined that Defendant's Motion to Dismiss his First Amended Complaint should be granted.  Plaintiff cannot at this juncture avoid the court's ruling or resurrect claims that were previously abandoned by him or dismissed with prejudice by unilaterally nonsuiting or dismissing them after-the-fact postjudgment with the intent of later reurging them after conducting discovery.

Likewise, Mr. Howley's effort to raise arguments in his Rule 59(e) motion that were not previously asserted in response to Defendant's dispositive motion does not cure his prior waiver or abandonment of claims.  *United States v. Stanley*, 595 F. App'x 314, 317 (5th Cir. 2014) (stating that a party's failure to raise an issue or defense in response to a dispositive motion constitutes waiver, and the subsequent filing of a motion for reconsideration does not abrogate the waiver). The court is also not required to "rehash" claims or consider theories of recovery seriatim at Plaintiff's convenience.  A "busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." *Rosenzweig*, 332 F.3d at 864-65 (citation omitted); *Southern Constructors Grp., Inc.*, 2 F.3d at 612) (noting that the Fifth Circuit has affirmed denials of requests for leave to amend when the movant "attempted to present theories of recovery seriatim to the district court") (citation omitted). As a result of its determination that Plaintiff abandoned or waived certain claims and issues, only his DTPA in his First Amended Complaint survives, which the court discusses in the next section.

### 3.  Plaintiff's DTPA Claim Based on Texas Insurance Code Violations Was Properly Dismissed as Insufficiently Pleaded.

Bankers Standard moved to dismiss Plaintiff's DTPA claim, contending that Plaintiff's First Amended Complaint failed to allege: (1) that Plaintiff suffered any injury independent of the denial of Policy benefits or breach of contract; (2) facts sufficient to support a reasonable basis or inference that it is liable for the various alleged violations of the Texas Insurance Code; (3) facts

that, if proved, would establish that its conduct in allegedly violating the Texas Insurance Code was the producing cause of Plaintiff's damages; and (4) facts sufficient to satisfy Rule 9(b)'s heightened pleading standard for the alleged Texas Insurance Code violations based on fraud or misrepresentations.

The court granted Bankers Standard's Motion to Dismiss Plaintiff's DTPA claim in his First Amended Complaint. The court determined that this claim, which was based on various alleged violations of Chapter 541 of the Texas Insurance Code and Plaintiff's allegations of misrepresentations and deceptive conduct,[6] was insufficiently pleaded to state a claim for relief under Rule 12(b)(6) or Rule 9(b). The court explained that Mr. Howley's account of Bankers Standard's conduct was too attenuated, general, and conclusory, and, ultimately, failed to demonstrate that Bankers Standard committed a violation of the DTPA or the Texas Insurance Code. The court agreed with Bankers Standard that Mr. Howley's allegations regarding his DTPA claim merely recited, word for word, sections of Chapter 541 of the Texas Insurance Code, making them conclusory and lacking the necessary sufficiency that would allow the court to reasonably infer that Defendant violated the Texas Insurance Code, or that Defendant's conduct was a producing cause of Plaintiff's economic damages. The court also determined that Plaintiff's DTPA allegations based on deceptive conduct and misrepresentations failed to satisfy Rule 9(b)'s heightened pleading standard.

In his Rule 59(e) motion, Plaintiff does not take issue with the court's application of Rule 12(b)(6) or Rule 9(b) to his DTPA claim. He, instead, references for the first time the allegations in paragraphs 10, 31, 32, and 35 of his First Amended Complaint and notes that, in pleading his

---

[6] Violations of Chapter 541 of the Texas Insurance Code constitute violations of the DTPA. Tex. Bus. & Comm. Code Ann. § 17.50(a)(4) (stating that a consumer can bring an action under this subsection against any person for acts or practices that violate Chapter 541 of the Texas Insurance Code if such acts or practices are a producing cause of the consumer's economic damages or damages for mental anguish).

**Memorandum Opinion and Order – Page 16**

"Second Cause of Action for Unfair or Deceptive Acts or Trade Practices," he "incorporated paragraphs 1 through 29" of his First Amended Complaint. Pl.'s R. 59(e) Mot. ¶ 17 (quoting Pl.'s First Am. Compl. ¶ 30).  In addition, Plaintiff contends, based on the July 2, 2019 denial of benefits letter submitted in support of his Rule 59(e) motion, that [t]his scant letter, lacking in specificity, is all [he] received about the denial" of his claim for Policy benefits.

Plaintiff's DTPA claim, like all of his other claims, is pleaded in typical "shotgun" fashion by incorporating by reference all of the allegations in his First Amended Complaint that precede his "Second Cause of Action for Unfair or Deceptive Acts or Trade Practices," including irrelevant jurisdictional and venue allegations. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-22 (11 Cir. 2015) (describing the four general types of "shotgun" pleadings). Plaintiff's pleadings are also "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id*. at 1322.  Causes of action alleged using a "shotgun" approach typically lack substantive plausibility because, as opposed to the "short and plan statement" requirement contemplated by Federal Rule of Civil Procedure 8, "shotgun" pleadings incorporate by reference "irrelevant factual allegations and legal conclusions," and consist of numerous conclusory and vague allegations. *Roe v. Johnson Cnty., Tex.*, 3:18-CV-2497-B-BN, 2019 WL 5031357, at *4-5 (N.D. Tex. July 29, 2019), *R. & R. adopted*, 3:18-CV-2497-B-BN, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)).

The Fifth Circuit has previously denounced what it has referred to as the "'shotgun approach' to pleadings, . . . where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick," and it has explained that this pleading approach may be sanctionable in certain circumstances under Federal Rule of Civil Procedure 11.  *Southern*

*Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788-89 (5th Cir. 1986), *abrogation on other grounds recognized by Childs v. State Farm Mut. Auto. Ins. Co*., 29 F.3d 1018, 1023-24 (5th Cir. 1994) ("Appellants sued Phillips without knowing how he fit into the picture, apparently hoping that later discovery would uncover something. If Rule 11 is to mean anything and we think it does, it must mean an end to such ['shotgun approach'] expeditionary pleadings.") (citation omitted). This approach to pleading claims is also discouraged by courts because it interferes with a district court's ability to manage its docket, unnecessarily impedes the orderly and efficient disposition of disputes, and wastes scarce judicial resources by causing courts to engage in the onerous task of sifting through a myriad of irrelevant allegations in ruling on the sufficiency of a claim, making it difficult to know which factual allegations were intended to support which claims for relief. *See Weiland*, 792 F.3d at 1321-22 & nn.9 & 12 (citing *Anderson v. District Bd. of Trs. Of Cent. Fla. Cmty. Coll*., 77 F.3d 364, 366-67 (11th Cir. 1996)); *Strategic Income Fund, L.L.C*., 305 F.3d at 1295-96 & n.10 (citing cases); *Ebrahimi v. City of Huntsville Bd. of Educ*., 114 F.3d 162, 165 (11th Cir. 1997) (citation omitted).

Plaintiff's reliance in his Rule 59(e) motion on paragraph 10 of the First Amended Complaint to support his DTPA claim is a classic example of the unnecessary confusion created by "shotgun" pleadings.  A review of Plaintiff's November 8, 2019 response, which is the focus of his Rule 59(e) motion, shows that Plaintiff himself did not previously rely on the allegations in paragraph 10 to support his DTPA claim. Plaintiff, instead, contended that the allegations in paragraphs11 through 20 of his First Amended Complaint were sufficient to establish his DTPA claim and survive Defendant's challenge under Rules 12(b)(6) and 9(b).  Pl.'s Resp. 3 & n.9.[7]

---

[7] Even considering this paragraph, Plaintiff's DTPA is not sufficiently pleaded for the reasons herein explained.

**Memorandum Opinion and Order – Page 18**

In any event, the court did not use this as a justification for granting Defendant's Motion to Dismiss Plaintiff's First Amended Complaint; it makes the point here only to emphasize the difficulty and confusion created by Plaintiff's pleading approach. The court, instead, attempted to the best of its ability to ascertain the factual bases of the claims alleged in the First Amended Complaint and determine whether Plaintiff pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Stated another way, the court assessed the allegations in Plaintiff's First Amended Complaint to determine whether the facts alleged allowed it to draw the reasonable inference that Bankers Standard was liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

As the court explained, while a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (quotation marks, citations, and footnote omitted). When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679.

In ruling on Plaintiff's pending posjudgment motions, the court similarly focuses on the applicable legal standards to determine whether Mr. Howley is entitled to the relief sought.  For the reasons already explained, the court cannot, under the applicable legal standard, consider new arguments or evidence that are outside of Plaintiff's live pleading (First Amended Complaint) and his November 8, 2019 response in determining whether he has clearly established that the court's

dismissal of his DTPA claim amounted to either a manifest error of law or fact. Thus, the court does not consider Plaintiff's evidence regarding the Policy or the July 2, 2019 denial of benefits letter or new factual allegations or arguments related to this evidence that existed before the court entered judgment, as it does not qualify as "newly discovered evidence,"[8] and Plaintiff has not established, or even attempted to explain, why such evidence, facts, or arguments could not have been discovered earlier by proper diligence and presented to the court before entry of judgment. *Infusion Res., Inc.*, 351 F.3d at 696-97.  Regardless, consideration of the Policy and the July 2, 2019 denial of benefits letter undercuts, rather than supports, Plaintiff's DTPA claim and his postjudgment request to amend his pleadings as to this claim.

Moreover, the thrust of Plaintiff's Rule 59(e) motion is the effect, if any, of the court not considering his November 8, 2019 response in ruling on Defendant's Motion to Dismiss. The court, therefore, focuses on this response in determining whether the dismissal of his DTPA claim, as pleaded in his First Amended Complaint, constitutes a manifest error of law or fact.

### a. Sufficiency of Plaintiff's DTPA Allegations Based on Texas Insurance Code Section 541.060

Plaintiff argued in his November 8, 2019 response that his DTPA claim and allegations regarding Bankers Standard's violations of the Texas Insurance Code were sufficiently pleaded, but he did so with a broad brush without explaining why the allegations in his First Amended Complaint were sufficient for purposes of Rule 12(b)(6) and Rule 9(b)'s heightened pleading requirement. Plaintiff contended that paragraphs 17 through 20 of his pleadings set forth the Texas Insurance Code Violations on which his DTPA claim was based, Pl.'s Resp. 3 & n.9, and that paragraphs 11 through 18 of his pleadings alleged with particularity the prohibited conduct under the Texas Insurance Code. *Id.* at 3.  Even assuming that the arguments in Plaintiff's response are

---

[8] *Marseilles Homeowners Condominium Ass'n Inc.*, 542 F.3d at 1058 (citation omitted).

**Memorandum Opinion and Order – Page 20**

sufficient to avoid a waiver finding, the court disagrees that his DTPA claim was sufficiently pleaded for the reasons that follow.

Mr. Howley explained that his DTPA claim is based on violations of sections 541.060(a)(1), 541.060(a)(2)(A), 541.060(a)(3), and 541.060(a)(7) of the Texas Insurance Code:

> 6. Plaintiff's Amended Complaint alleges numerous violations of Chapter 541 of the Texas Insurance Code [Doc. 7]. Specifically, Plaintiff alleged that Defendant Bankers Standard Insurance Company committed violations of Section 541.060(a)(1) (misrepresenting material facts relating to the coverage at issue); Section 541.060(a)(2)(A) (failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim); Section 541.060(a)(3) (failing to provide a reasonable basis in the policy for the failure to offer a compromise settlement of the claim); and Section 541.060(a)(7) (refusing to pay a claim without conducting a reasonable investigation).

Pl.'s Resp. ¶ 6 (footnote omitted).  Regarding these alleged violations, Plaintiff contends:

> 7. Defendant's selective reading of Plaintiff's Amended Complaint fails to consider the referenced paragraphs in context; Bankers would prefer that the Court consider them as isolated statements, rather than as part of the document as a whole. The referenced paragraphs are part of the Complaint[']s facts section, and follow paragraph[s] where Plaintiff alleged the specific supporting facts that Defendant is searching for. Paragraphs 11-18 allege with particularity that Defendant knowingly ignored covered damages from its inspection, engaged in prohibited conduct under the Insurance Code, and lists with specificity the covered damages that Defendant failed to provide coverage for, including pictures.
>
> 8. Plaintiff then explains how adjuster Shawn Lopriore told [him] that his damages were below his deductible and intentionally misrepresented the terms of the policy in order to underpay [his] claim.

*Id.* ¶¶ 7-8.

Based on the holdings in *Martinez v. State Farm Lloyds*, No. 3:16-CV-00040-M, 2016 WL 4427489 (N.D. Tex. Aug. 22, 2016), and *Arrow Bolt & Electric, Inc. v. Landmark American Insurance Company* ("*Arrow Bolt*"), No. 3:17-CV-1894-M, 2017 WL 4548319 (N.D. Tex. Oct. 12, 2017), Mr. Howley further argues that "[f]ederal court's analyzing similar property claims under the federal pleading standard have found that complaints containing the specificity evident in Plaintiff's complaint are sufficient to withstand a 12(b)(6) challenge." Pl.'s Resp. ¶ 9.

The issue in *Martinez* and *Arrow Bolt* was whether an insurance adjuster was improperly joined to prevent removal of the case to federal court.  *Arrow Bolt*, 2017 WL 4548319 at *2-3; *Martinez*, 2016 WL 4427489 at *2-3.  Chief District Judge Barbara Lynn explained that, generally, there is no improper joinder if the plaintiff can survive a Rule 12(b)(6) challenge.  *Arrow Bolt*, 2017 WL 4548319 at *2 (citation omitted); *see Martinez*, 2016 WL 4427489 at *2 (setting forth improper joinder standard).  Judge Lynn also explained that several district courts in this district have previously held that an insurance adjuster could be held personally liable for engaging in unfair settlement practices under Texas Insurance Code § 541.060(a)(2).  *Arrow Bolt*, 2017 WL 4548319 at *3 (citations omitted); *Martinez*, 2016 WL 4427489 at *2 (citations omitted).

In *Arrow Bolt*, the plaintiff alleged that the insurance adjuster had knowingly and intentionally disregarded damages and undervalued the plaintiff's insurance claim for damages to the plaintiff's property.  *Arrow Bolt*, 2017 WL 4548319 at *3.  In *Martinez*, the plaintiff alleged that the insurance adjuster: (1) "failed to include all of Plaintiff's damages [in his report that were] noted upon inspection"; and (2) "underestimated and undervalued the cost of repairs to the damaged items that he did include in the estimate" by "improperly depreciat[ing] some of the damages when evaluating and estimating the cost to repair Plaintiff's property" and applying "depreciation in excess without any reasonable explanation for application of such significant

depreciation or any annotations in his estimate regarding the age and/or condition of the damaged items." *Martinez*, 2016 WL 4427489 at *3.  In both cases, Judge Lynn concluded that remand was required because the plaintiffs' section 541.060(a)(2) allegations against the individual adjusters were sufficient to withstand a Rule 12(b)(6) challenge, and that a reasonable basis, therefore, existed to predict that the plaintiffs might be able to recover against the insurance adjusters. *Arrow Bolt*, 2017 WL 4548319 at *3; *Martinez*, 2016 WL 4427489 at *3.  As a result, the individual adjusters were not improperly joined and their presence in the removed actions deprived the court of diversity jurisdiction.  *Arrow Bolt*, 2017 WL 4548319 at *3; *Martinez*, 2016 WL 4427489 at *3.

Plaintiff's reliance on *Martinez* and *Arrow Bolt* is misplaced.  While this action was removed to federal court based on diversity jurisdiction, it does not involve the issue of whether an insurance adjuster was improperly joined or, more specifically, whether a valid claim for relief under section 541.060(a)(2) of the Texas Insurance Code has been pleaded against an adjuster personally. Moreover, Judge Lynn's analysis in both cases was limited to the plaintiffs' section 541.060(a)(2) claims and whether they could survive a challenge under Rule 12(b)(6).  No mention was made regarding the applicability, if any, of Rule 9(b) to the plaintiffs' claims under Chapter 541 of the Texas Insurance Code.

In this case, on the other hand, Plaintiff acknowledged in his November 8, 2019 response that his DTPA claim is subject to Rule 9(b)'s pleading standard, and he does not expressly contend otherwise in his Rule 59(e) motion.  He, instead, simply asserts that his DTPA pleadings are sufficient to satisfy Rule 12(b)(6), as well as Rule 9(b).  Plaintiff's response also fails to explain why Judge Lynn's analysis regarding section 541.060(a)(2) of the Texas Insurance Code should be extended to his DTPA claim based on alleged violations of other subsections of 541.060(a).

Accordingly, *Martinez* and *Arrow Bolt* are distinguishable and do not support Plaintiff's contention that the holdings in these cases establish the sufficiency of his pleadings regarding his DTPA claim that is based on violations of the Texas Insurance Code other than section 541.060(a)(2).

Section 541.060(a) of the Texas Insurance Code, as it applies to Mr. Howley's DTPA claim, prohibits unfair settlement practices and provides:

(a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:

(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:

(A) a claim with respect to which the insurer's liability has become reasonably clear;

. . .

(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim;

Tex. Ins. Code Ann. § 541.060(a)(1), (2), (3), & (7). Although Plaintiff identifies the sections of the Texas Insurance Code on which his DTPA claim is based, he merely recites the statutory language of those sections without explaining why the pleadings in his First Amended Complaint are adequate to state valid claims for relief under the DTPA based on alleged violations of sections 541.060(a)(1), 541.060(a)(2)(A), 541.060(a)(3), and 541.060(a)(7) of the Texas Insurance Code. As a result, the court is left once again to guess which allegations in Plaintiff's First Amended Complaint were meant to support these claims.

**Memorandum Opinion and Order – Page 24**

### i.       Section 541.060(a)(1)

Based on its review of Plaintiff's pleadings, paragraphs 15, 16, and 32 *appear* to apply to

his DTPA claim based on alleged violation of section 541.060(a)(1) of the Texas Insurance Code.

Plaintiff alleges as follows in these paragraphs of his First Amended Complaint:

> 15. Shawn Lopriore told Plaintiff that his damages were below his deductible.
> Shawn Lopriore **intentionally misrepresented** the terms of the policy in order to
> underpay Plaintiff's claim anticipating that Plaintiff would not bother disputing the
> "lowball" offer.
>
> 16. To be sure, "the deduction of prospective contractors' overhead and profit and
> sales tax in determining the actual cash value under a replacement cost policy is
> improper, is not a reasonable interpretation of the policy language, and is unfair to
> insureds."
>
> . . .
>
> 32. After Plaintiffs filed a claim, Defendant made, issued, or circulated an estimate,
> illustration, circular, or statement **misrepresenting** with respect to a policy issued
> or to be issued: the terms of the policy or the benefits or advantages promised by
> the policy when she told Plaintiff that his policy does not cover general contractors'
> overhead and profit. This was also a misrepresentation of a material fact or policy
> provision relating to coverage at issue.

Pl.'s First Am. Compl. 15, 16, 32 (footnote omitted & emphasis added).

Because section 541.060(a)(1) applies to misrepresentations made during the settlement of

a claim regarding a "policy provision relating to coverage," and Plaintiff's claim under this section

is for intentional misrepresentations, Rule 9(b) applies. "Rule 9(b) applies by its plain language to

all averments of fraud, whether they are part of a claim of fraud or not."  *Lone Star Ladies Inv.*

*Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) (applying the heightened pleading

requirements to statutory claims based on allegations of fraud, as "Rule 9(b) applies by its plain

language to all averments of fraud, whether they are part of a claim of fraud on not.").

Mr. Howley contended in his response that the pleadings in his First Amended Complaint

satisfied the Rule 9(b)'s "low threshold" and "lenient standard."  Pl.'s Resp. 5.  Contrary to

Plaintiff's assertion, Rule 9(b) contains a heightened pleading standard that requires a plaintiff to plead the circumstances constituting fraud with particularity. *See* Fed. R. Civ. P. 9(b); *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153 (5th Cir. 2010). Thus, allegations of fraud must meet a higher, or more strict, standard than the basic notice pleading required by Rule 8." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir.1993); *see Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir.1994) (holding that while Rules 8 and 9(b) are to be harmonized, "Rule 8 has never been read to eviscerate Rule 9(b)'s requirement that an averment of fraud must be stated with particularity."). "This standard is derived from concerns that unsubstantiated charges of fraud can irreparably damage a defendant's reputation." *Norman*, 19 F.3d at 1022. "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).

Mr. Howley's pleadings identify adjuster Shawn Lopriore as the person who misrepresented to him a Policy provision in handling his claim and allege that the misrepresentation concerned a false statement that general contractors' overhead and profit are not covered by his Policy. Mr. Howley also alleged that the storm occurred in June 2019, but he did not indicate when or where this misrepresentation was made. It is not even clear when the Policy claim that allegedly gave rise to this misrepresentation was filed because Mr. Howley merely alleges that he filed his claim after the storm. Mr. Howley also failed to explain in his pleadings

and November 8, 2019 response why the alleged statement by Shawn Lopriore regarding coverage of contractors' overhead and profit was fraudulent.

Mr. Howley alleged that his Policy is a replacement cost policy, and that coverage under a replacement cost policy includes contractors' overhead and profit. This allegation regarding the coverage generally provided under replacement policies, however, amounts to a legal conclusion that is not sufficiently tied to the terms of the Policy at issue. In a footnote, Mr. Howley also cites to Texas Department of Insurance Commissioner's Bulletin #B-0045-98, but he does not explain the significance of this Bulletin in his First Amended Complaint or his response.  Pl.'s Resp. ¶ 16 & n.1.  Having reviewed the Bulletin, it is not clear from the allegations in Plaintiff's First Amended Complaint whether it applies here.  The express purpose of the Bulletin is to state the Texas Department of Insurance's position that "the actual cash value of a structure under a replacement cost policy, *when the insurer does not repair or replace the structure*, is the replacement cost with proper deduction for appreciation." Tex. Dep't of Ins. Comm'r Bulletin #B-0045-98 (emphasis added).  Plaintiff acknowledges as follows in his pleadings:

> Under the terms of Plaintiff's homeowner[']s insurance policy, Bankers Standard Insurance Company agreed to pay the cost to repair, rebuild or replace Plaintiff's property in the event it was damaged by hail or windstorm in exchange for Plaintiff paying his premium. *If Plaintiff never repairs or replaces the damaged or destroyed property, payment will be on an actual cash value basis*. This means replacement cost less applicable depreciation.

Pl.'s First Am. Compl. 22 (emphasis added).  It is not apparent from Plaintiff's pleadings, though, whether he had repaired or replaced the roof to his residence. Consequently, the Texas Department of Insurance's position in Bulletin #B-0045-98 regarding the actual cash value of a structure under a replacement cost policy is not relevant to this case.

Further, Mr. Howley's quotation in paragraph 16 of his pleadings to this Bulletin, that "the deduction of prospective contractors' overhead and profit and sales tax in determining the actual

cash value under a replacement cost policy is . . . not a reasonable interpretation of the policy language," at most establishes disagreement regarding the Policy language or coverage under the Policy, not a fraudulent misrepresentation.  *Id.* ¶ 16.  Without information regarding the actual Policy language, as it pertains to this alleged violation of the Texas Insurance Code, the allegation that Defendant or Shawn Lopriore misrepresented a Policy provision is conclusory.  Moreover, Plaintiff's allegation and contention that Defendant or Shawn Lopriore misrepresented the Policy, by stating that it does not cover contractors' overhead and profit, amounts to a dispute regarding coverage, not the Policy's terms, which is not a violation of section 541.060(a)(1), even though Plaintiff's claim under this section was framed as a misrepresentation of the Policy's terms. Accordingly, dismissal of this claim was appropriate.

Plaintiff's reliance, in his Rule 59(e) motion, on the allegations in paragraphs 10 and 31 of his First Amended Complaint regarding misrepresentations and fraudulent omissions of Policy coverage as it pertains to contractors' overhead and profit, and Bankers Standard's intention to perform as represented, fares no better.  As noted, Plaintiff now asserts for the first time in his Rule 59(e) motion that paragraph 10 also supports his DTPA claim, but he does not specify which of the Texas Insurance Code sections referenced in his November 8, 2019 response applies to this claim. Plaintiff alleges as follows in these paragraphs of his First Amended Complaint:

> 10. Bankers Standard Insurance Company marketed, promoted and advertised its products or services **with no intent** to sell them as advertised. During the underwriting of the risk and binding of Plaintiff's coverage Bankers Standard Insurance Company **failed to disclose** that it systematically excludes prospective contractor´s overhead and profit in the event of a claim. Failing to disclose this material information caused Plaintiff to enter into a transition he otherwise would not have entered into.

> 31. During the underwriting and binding of coverage of Plaintiff's insurance policy, Bankers Standard Insurance Company failed to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made and made a statement in a manner that would

mislead a reasonably prudent person to a false conclusion of a material fact with respect to the coverage provided by the policy.

Pl.'s First Am. Compl. ¶¶ 10, 31 (emphasis added).

Of the Texas Insurance Code sections identified in Plaintiff's November 8, 2019 response, only subsection 541.060(a)(1) applies to misrepresentations regarding a Policy. Section 541.060, however, only applies in the context of settling claims and, thus, does not apply to misrepresentations in the underwriting process prior to a claim being filed. § 541.060(a) (defining unfair settlement practices "with respect to a claim"). Unlike section 541.060, "[s]ection 541.061 applies to the misrepresentation of an insurance policy" but does not specify that it applies in the context of settling claims. *Texas Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 446 (Tex. 2012). In his November 8, 2019 response, Plaintiff asserted that his DTPA claims were for violations of section 541.060.  No mention was made in Plaintiff's response to section 541.061 or the grounds asserted in paragraph 10 or 31 of his First Amended Complaint regarding such claim.  Any such argument by Plaintiff was, therefore, waived.  Even if Plaintiff intended to assert a claim under section 541.061 for misrepresentations by Defendant regarding his Policy, it fails for similar reasons.

Section 541.061 provides:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to misrepresent an insurance policy by:

(1)  making an untrue statement of material fact;

(2)  failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

(3)  making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(4)  making a material misstatement of law; or

(5) failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

Tex. Ins. Code. Ann. § 541.061(1)-(5). While section 541.061 expressly applies to misrepresentations regarding an insurance policy, it does not require proof that a misrepresentation was intentional. Thus, by its terms, section 541.061 does not require proof of fraud as an element.

Plaintiff, however, has alleged that Defendant failed to disclose that it systematically excludes prospective contractors' overhead and profit in the event of a claim, that Defendant had no intention of providing the coverage advertised or represented, and that this misrepresentation by omission caused Plaintiff to enter a transaction that he would not have otherwise entered. Fraud by omission is a subcategory of fraud because the omission or nondisclosure may be as misleading as a positive misrepresentation of fact. *Myre v. Meletio*, 307 S.W.3d 839, 843 (Tex. App.—Dallas 2010, pet. denied). Because Plaintiff's claim under section 541.061 is grounded in fraud by omission as opposed to negligence, Rule 9(b)'s heightened pleading standard applies. *See Lone Star Ladies Inv. Club*, 238 F.3d at 368 (explaining that "whe[n] averments of fraud are made in a claim in which fraud is not an element," Rule 9(b) applies). In this situation, "an inadequate averment of fraud does not mean that no claim has been stated"; rather, the court disregards the averments of fraud that do not satisfy Rule 9(b) "and then ask[s] whether a claim has been stated." *Id.* In making this determination, the court is under no obligation to rewrite a deficiently pleaded claim or complaint. *Id.*

Here, any claim by Plaintiff under section 541.061, as pleaded, does not satisfy Rule 9(b), as he does not allege when or where the alleged misrepresentation by omission was made. Plaintiff also fails to allege who at Bankers Standard made the statement or failed to make the statement. Additionally, when the court disregards Plaintiff's averments of fraud that do not satisfy Rule 9(b),

all that remains regarding this claim is Plaintiff's mere recitation of the statutory language. Accordingly, even if not waived or abandoned, any claim by Plaintiff under section 541.061 was not sufficiently pleaded, and dismissal was appropriate.

### ii.      Section 541.060(a)(2)(A)

As noted, it is an unfair settlement practice under this subsection to "fail[] to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." Tex. Ins. Code Ann. § 541.060(a)(2)(A). Unlike § 541.060(a)(1), this subsection does not require proof of a material misrepresentation. As a result, a claim based on violation of section 541.060(a)(2)(A) would normally only need to satisfy Rule 8(a)'s pleading requirement.  It is readily apparent from Plaintiff's pleadings, however, that this claim is grounded in fraud.  Thus, Rule 9(b) again applies.

Specifically, Plaintiff alleges in paragraphs 7, 13, 14, 15, 17, 18, and 33 that Bankers Standard systematically denies hail and wind damage claims . . . knowing that the initial valuations are **fraudulent** . . . and biased" and "**set about to deny or underpay a properly covered loss** to [his] detriment"; that adjuster Shawn Lopriore "**intentionally misrepresented** the terms of the policy in order to underpay [his] claim" and "**misrepresented** the damage preexisted the storm"; and that "adjusters assigned to [his] claim . . . handled the claim in a manner **calculated to construct a pretextual basis**" for denying or underpaying the claim.  Pl.'s First Am. Compl. ¶¶ 7, 13, 15, 18 (emphasis added).  He further asserts in paragraph 33 that Bankers Standard "failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of [his] claim with respect to which [its] liability had become reasonably clear by undervaluing the cost to repair the undisputed damaged property."  *Id.* ¶ 33.

Plaintiff's allegations regarding this claim, though, do not satisfy Rule 9(b) or Rule 8(a)'s more lenient pleading standard when the insufficiently pleaded allegations of fraud are disregarded. Plaintiff's allegation in paragraph 33 that Defendant's liability had become "reasonably clear" is conclusory, and this and Plaintiff's allegation that the damage to his property was "undisputed" are inconsistent with his other allegations that the parties not only disputed the extent and cause of the damage, but also disputed whether the damages were covered under the Policy.  To the extent that Defendant's investigation of the claim could be construed as a settlement attempt, Plaintiff acknowledges in his Rule 59(e) motion that Bankers Standard denied his claim by letter dated July 2, 2019, less than 30 days after the June 9, 2019 storm. This defeats any claim by him that Bankers Standard failed to promptly handle his claim.  Thus, this claim at its core is based on nothing more than Bankers Standard's denial of Plaintiff's claim and the parties' disagreement as to whether the damage at issue was covered by the Policy, which is insufficient to support a violation of section 541.060(a)(2)(A). Dismissal of this claim was, therefore, appropriate, as Plaintiff failed to state a plausible claim for relief under Subsection 541(a)(2)(A).

### iii.    Section 541.060(a)(3)

As explained, the failure to promptly provide an insured with "a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim" is an unfair or deceptive act or practice in the insurance business under section 541.060(a)(3). Tex. Ins. Code Ann. § 541.060(a)(3). Because a claim under this section does not require allegations of fraud, a plaintiff need not satisfy Rule 9(b)'s heightened pleading requirements and Rule 8(a)'s standard applies.

Here, Plaintiff recited the language in section 541.060(a)(3) and alleges in conclusory fashion in paragraph 34 of his First Amended Complaint that Defendant failed to promptly provide

him a reasonable explanation for the denial of his claim, which, without more, is insufficient even under Rule 8(a) to state a plausible claim for relief under section 541.060(a)(3). Plaintiff further alleged in paragraphs 35 and 41 that "Bankers Standard Insurance Company provided no explanation of what damages it considered to be wear and tear and therefore excluded"; and that "there was no reasonable basis for denying full benefits for the roof claim." Pl.'s First Am. Compl. ¶ 35. Section 541.060(a)(3), though, only requires an insurer to provide a reasonable explanation for its denial of an insured's claim. According to Plaintiff's pleadings, adjuster Shawn Lopriore told him that his claim was denied or going to be denied because the roof damage preexisted the storm, and the damages to the roof were below his deductible as a result of the exclusion of contractors' overhead and profit in determining the replacement cost or actual cash value. The allegations in the First Amended Complaint, therefore, contradict Plaintiff's assertion that Defendant failed to provide him with "a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for [its] insurer's denial of [his] claim." §541.060(a)(3). Dismissal of this claim was, therefore, appropriate, as Plaintiff failed to state a plausible claim for relief under section 541.060(a)(3).

### iv.    Section 541.060(a)(7)

Section 541.060(a)(7) states that it is an unfair settlement practice for an insurer to "refus[e] to pay a claim without conducting a reasonable investigation with respect to the claim." Tex. Ins. Code Ann. § 541.060(a)(7). As this section does not require allegations of fraud, a plaintiff need not satisfy Rule 9(b)'s heightened pleading requirements, and Rule 8(a)'s standard generally applies. According to Plaintiff's pleadings, however, this claim is grounded in fraud, as he alleged that Defendant refused to pay his claim without conducting a reasonable investigation, and, as an example, he asserts that adjuster Shawn Lopriore "misrepresented" that the roof damage

preexisted the storm "[d]espite observing numerous storm[-]created openings in the roofing system allowing water to penetrate the building."  Pl.'s First Am. Compl. ¶ 36.  Plaintiff further alleged that "[a] reasonable objective investigation would have revealed the extensive damage and Plaintiff would have been fully compensated under the terms of the Policy."  *Id*. ¶ 17.  In addition, Plaintiff alleged that Bankers Standard "orchestrated the investigation in a manner calculated to construct a pretextual basis for denial or underpayment of Plaintiff's claim."  In light of the allegations Bankers Standard or its adjusters intentionally misrepresented the nature of the damage and orchestrated its investigation as a pretext for denying Plaintiff's claim, the court concludes that this claim rests on allegations of fraud.  Rule 9(b), therefore, applies, but this claim fails whether viewed under Rule 9(b)'s or Rule 8(a)'s pleading standard when disregarding Plaintiff's allegations of fraud.

Plaintiff's allegations in paragraphs 11 and 36, that Defendant refused to pay his claim without conducting a reasonable investigation, merely recite the statutory language and are insufficient to state a plausible claim under section 541.060(a)(7). Plaintiff's remaining allegations that the damage was caused by the storm, as opposed to preexisting the storm, and that a reasonable objective investigation would have revealed extensive damage that was covered by the Policy are similarly conclusory and lack sufficient factual details. It is apparent from Plaintiff's pleadings that he disagrees with Bankers Standard's decision to deny his claim, but it is not clear why he believes the investigation conducted by Defendant's adjusters was not reasonable. There is also no information in the First Amended Complaint regarding the roof's age, composition, or condition before the storm that would allow the court to reasonably infer that the damage claimed was created by the storm as opposed to preexisting damage.  Plaintiff's assertions, instead, are without substance and merely highlight his disagreement with the outcome of Bankers Standard's

investigation.  At most, Plaintiff's section 541.060(a)(7) claim, as pleaded, offers nothing more than the mere possibility that the conduct alleged *might* constitute an unfair settlement practice. *Twombly* demands more in that it requires that factual allegations be enough to raise a right to relief beyond the speculative level.  Accordingly, dismissal of this claim was appropriate, as Plaintiff failed to state a plausible claim for relief under section 541.060(a)(3).

### b. Producing Cause and Independent Injury

Dismissal of Plaintiff's DTPA claim based on alleged violations of Chapter 541 of the Texas Insurance Code was also appropriate because Plaintiff failed to respond to Defendant's producing cause and independent injury arguments.  Regarding independent injury, Defendant contended that Plaintiff was not entitled to extra-contractual damages for alleged violations of the Texas Insurance Code because his allegations were insufficient to establish that he was entitled to Policy benefits, or that he suffered an injury independent of his right to benefits as a result of Bankers Standard's alleged statutory violations.  Def.'s Mot. to Dismiss 4 (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018).  Defendant further alleged that Plaintiff's allegations were insufficient to establish that its conduct was the proximate or producing cause of his damages under the DTPA and Texas Insurance Code.  Def.'s Mot to Dismiss 7 (citing *Griggs v. State Farm Lloyds*, 181 F.3d 674, 701 (5th Cir. 1999), for the proposition that "[b]oth the Insurance Code and the Deceptive Trade Practices Act require proof that the defendant's conduct was the cause in fact of actual damages.").  Realizing that it is the sufficiency of the allegations and not the level of proof that is determative at the pleading stage, the court held that an additional basis for granting Defendant's Motion to Dismiss Plaintiff's First Amended Complaint was Plaintiff's conclusory allegation in paragraph 37 that he suffered "damages" as a result of Defendant's conduct was insufficient to state a statutory claim for extra-contractual

damages. *See* Pl.'s First Am. Compl. ¶ 37 ("As a result of the aforementioned conduct, Plaintiff has incurred damages within the jurisdictional limits of this Court.").

Moreover, a review of Plaintiff's November 8, 2019 response shows that he did not respond to either of these arguments by Defendant. As a result, Plaintiff waived these issues. This and Plaintiff's abandonment of his cause of action for breach of the Policy forecloses any recovery by him for relief under the DTPA based on violations of Chapter 541 of the Texas Insurance Code. In *Menchaca*, the Texas Supreme Court held that an "insured cannot recover any damages based on an insurer's statutory violation unless the insured establishes a right to receive benefits under the policy or an injury independent of a right to benefits." *Menchaca*, 545 S.W.3d at 500-501. Plaintiff has not alleged that he suffered any injury independent of a right to Policy benefits; rather, the only injury alleged in his First Amended Complaint is the denial of Policy benefits. Having abandoned his breach of contract claim, it is difficult to see how he would be able to establish a right to receive benefits under the Policy.

Accordingly, even considering Plaintiff's November 8, 2019 response to Defendant's Motion to Dismiss, the court concludes that dismissal of his DTPA claim based on alleged violations of Chapter 541 of the Texas Insurance Code was appropriate.

For all of the reasons explained, the court will deny Plaintiff's Rule 59(e) motion to extent it is based on the contention that the court's dismissal of his claims, without considering his November 8, 2019 response, amounted to a manifest error of law or fact.

### III.     Postjudgment Request to File Second Amended Complaint Based on Plaintiff's Argument that the Court Erred in Not Giving Him Another Opportunity to Amend His Pleadings Before Dismissing With Prejudice His Claims

The parties dispute whether and to what extent Plaintiff's postjudgment motions and requests to amend his pleadings are governed by Rule 15(a), applicable to amendment of pleadings, as opposed to Rule 59(e), which applies to amendment of judgments. As indicated,

Plaintiff filed postjudgment motions to amend his pleadings under Rule 59(e) and 15(a), but he relies heavily on Rule 15(a), whereas Defendant focuses on Rule 59(e)'s requirements.

**A.      Standard for Amendment of Pleadings After Entry of Judgment**

In *Rosenzweig*, the Fifth Circuit explained that, when leave is sought to amend pleadings after entry of a final judgment, such a request may only be made by appealing the judgment or seeking to alter or reopen the judgment under Rule 59 or 60. 332 F.3d at 864. Because the action in *Rosenzweig* had been dismissed with prejudice in an order titled "FINAL JUDGMENT," the Fifth Circuit concluded that the plaintiffs' postjudgment motion to alter or amend the judgment, and for leave to amend their complaint "must be treated as a motion under Rule 59(e), not Rule 15(a)." *Id*. (citation omitted).  The Fifth Circuit, nevertheless, determined that "the considerations for a Rule 59(e) motion are governed by Rule 15(a)" when a postjudgment request to amend pleadings is made because:

> [w]he[n] judgment has been entered on the pleadings, a holding that the trial court should have permitted amendment necessarily implies that judgment on the pleadings was inappropriate and that therefore the motion to vacate should have been granted. Thus, the disposition of the plaintiff's motion to vacate under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a).

*Id.* (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981)).

The Fifth Circuit in *Rosenzweig* further noted that the considerations in determining whether to grant or deny leave to amend a complaint under Rule 15(a) include: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig*, 332 F.3d at 864 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). *Rosenzweig* explained that, "[a]bsent such factors, the leave sought should . . . be freely given." *Rosenzweig*, 332 F.3d at 864.  As demonstrated by *Rosenzweig*

and other Fifth Circuit opinions, however, the provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation.

### B.   Discussion

Defendant focuses on the requirements for relief under Rule 59(e), whereas Plaintiff contends that he should be allowed to amend his pleadings under Rule 15(a)'s liberal pleading standard.  Regardless of the standard applied, Plaintiff has not established his entitlement to relief under Rule 15(a) or Rule 59(e). In its August 14, 2020 Memorandum Opinion and Order (Doc. 12), the court *sua sponte* determined that it would not allow Plaintiff to further amend his pleadings, reasoning as follows:

> Mr. Howley did not respond to Defendant's Motion to Dismiss and, thus, did not request to amend his pleadings in the event the court determined that he failed to state a claim. The provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation. The decision to allow amendment of a party's pleadings is within the sound discretion of the district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Norman v. Apache Corp*., 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining whether to allow an amendment of the pleadings, a court considers the following: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res. Grp. Inc*., 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

> Based upon the applicable legal standard, the court determines that Plaintiff should not be permitted to replead his claims. Mr. Howley's Amended Complaint, which is nearly identical to his state court petition (Doc. 1-2), does not offer any clarity or expansion regarding the claims he brings before the court. Although Plaintiff amended his complaint, he did not respond to Defendant's Motion to Dismiss. For these reasons, the court determines that Plaintiff has stated his best case and determines that any further attempts at amendment would be futile and needlessly delay resolution of this action. *Schiller*, 342 F.3d at 567 (quoting *Jacquez v. Procuni*er, 801 F.2d 789, 792 (5th Cir. 1986)). Moreover, as Plaintiff has not requested that this court allow amendment of his pleadings, he cannot

expect such dispensation on appeal. Accordingly, the court will not allow any further amendment of Plaintiff's pleadings.

Aug. 14, 2020 Mem. Op. & Order 14-15.

Plaintiff now argues in his postjudgment motions (Docs. 16, 20) that he should have been allowed to further amend his pleadings before the court dismissed with prejudice all of his claims because, contrary to the court's determination, he did in fact file a response. Pl.'s Mot. for Leave Mot. ¶ 2 ("The Court noted in Footnote 1 of the Opinion and Order that, "Plaintiff Charles Howley did not file a response," to Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint, however[,] **Plaintiff did respond** to Defendant's motion. [*See* Doc. 8].").   This assertion is misleading because, as already explained, the response alluded to by Plaintiff was filed in response to Defendant's original motion to dismiss the claims pleaded in his Original Petition, not to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.   The court has determined for the reasons explained at length in this opinion that consideration of his November 8, 2019 response had no effect on its prior decision to grant Defendant's Motion to Dismiss Plaintiff's First Amended Complaint and, if anything, undermines the arguments now made by Plaintiff in his postjudgment motions. Likewise, Plaintiff's assertion that he filed a response that the court failed to consider does not advance his contention that it was error to not allow him to further amend. The court previously determined that, because Plaintiff had not filed a response to Defendant's  Motion to Dismiss Plaintiff's First Amended Complaint, he had stated his best case such that any further attempts at amendment would be futile and needlessly delay resolution of this action. Consideration of Plaintiff's response, though, similarly undercuts his request to amend his pleadings and contention that the court erred in not allowing him to further amend before entry of judgment.

Plaintiff asserts that he did not file a separate response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint because doing so "would have been superfluous and inundated the court with duplicative responses addressing the same issue[s] analyzed in [his response to Defendant's original motion to dismiss] [Doc. 8]."). This self-serving argument, however, "takes the cake" and does not explain why, in the eight-month period after the court denied as moot Defendant's original motion to dismiss, and before it ruled on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiff could not have simply: (1) notified the court that he was standing on his November 8, 2019 response to Defendant's original motion to dismiss; and (2) requested that the court consider this response in ruling on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.  In light of the numerous documents filed since the court ruled on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, Plaintiff's explanation that he did not want to inundate the court with duplicative filings is at best disingenuous.

Plaintiff acknowledges that Rule 59(e) serves the "narrow purpose of allowing a party to correct manifest errors of law or fact to present newly discovered evidence." Pl.'s R. 59(e) Mot. 10.  He, nevertheless, argues that the court erred in not allowing him to further amend his complaint before entry of judgment, and that he should be granted leave now to amend to correct this alleged error, even though he fails to identify any error of law or fact or newly discovered evidence. *See* Pl.'s Reply (Doc. 28) ("This Court dismissed the case with prejudice, without granting leave to amend. That was manifest errors of law or fact.").  Despite Plaintiff's conflicting contentions to the contrary in paragraphs 28 of his Rule 59(e) motion and paragraphs 4 and 12 of his Motion for Leave under Rule 15(a), he never expressly requested leave to amend his pleadings in response to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

Plaintiff further asserts in his Rule 59(e) motion that he should be allowed to amend his

pleadings because:

> 25. This case remains at an early stage of litigation, there has been no undue delay, bad-faith or dilatory motive on Plaintiff's part, and there is no apparent prejudice to Defendant. In these circumstances, granting leave to amend to cure alleged pleading deficiencies in response to a motion to dismiss is warranted.
>
> 26. The scales of justice tip towards granting leave to amend. Plaintiff did respond to Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint. [*See* Doc. 8].
>
> 27. The court should freely give leave to amend when justice so requires. Fed. Rule Civ. P. 15(a)(2). Further, leave to amend would not be futile because Plaintiff can quickly add the details (i.e. citation to provisions in the policy that were breached) to bring the complaint in conformity with this Court's requirements.
>
> 28. In these circumstances, granting leave to amend to cure alleged pleading deficiencies in response to a motion to dismiss is warranted. *See Luce v. Edelstein*, 802 F. 2d 49, 56 (2d. Cir. 1986). **Further, Plaintiff's Response to Defendant's Rule 12(b)(6) Motion to Dismiss sought leave to amend** [Doc. 8 ¶ 5]; Appendix Ex. C at pg. 16-17.
>
> 29. **Dismissal with prejudice** of a $220,628.92 insurance claim, absent leave to amend, would be unprecedented under these facts.

*Id*. ¶¶ 25-28 (emphasis added in ¶ 28).

As noted, Plaintiff contradicts himself in his subsequent Motion for Leave Under Rule

15(a), by acknowledging, on one hand, that he did not actually seek to amend his pleadings in his

November 8, 2019 response, and asserting, on the other hand, that his "Response to Defendant's

Rule 12(b)(6) Motion to Dismiss sought leave to amend should the court find the pleadings

deficient." *See* Pl.'s Mot. for Leave ¶¶ 4 & 12). He still contends, though, that he should be granted

leave to amend now for reasons similar to those asserted in his Rule 59(e) motion:

> 4. **Plaintiff never sought leave to amend his pleadings previously** because Plaintiff believed the First Amended Complaint [Doc. 7] plead [sic] "enough facts to state a claim to relief that is plausible on its face." Clearly this Court's Order and Opinion determined that Plaintiff's First Amended Complaint did not survive Defendant's 12(b)(6) challenge. However, this case remains at an early stage of

litigation, there has been no undue delay, bad-faith or dilatory motive on Plaintiff's part, and there is no apparent prejudice to Defendant. In fact, the parties have exchanged written discovery and have discussed depositions of witnesses and a scheduling order. COVID-19 has made it difficult to coordinate witness depositions.

5. In these circumstances, granting leave to amend to cure alleged pleading deficiencies in response to a motion to dismiss is warranted.

6. Armed with this Court's guidance, Plaintiff seeks leave to file a Second Amended Complaint providing the factual specificity the court seeks.

7. Plaintiff's best case is set forth in the Second Amended Complaint. The breach of warranty and fraud claims are voluntarily nonsuited to be rehashed later after the facts of the case are developed through discovery.

8. Leave to amend should be freely given when justice so requires. FED. R. CIV. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).

9. Here, this Motion and contemporaneous Second Amended Complaint are being filed to conform with the Court's Order and Opinion. [Doc. 12.] Further, Defendant's Response to Plaintiff's Motion to Alter or Amend Judgment repeatedly criticizes Plaintiff for not filing an amended complaint and falsely claims that Plaintiff has had four opportunities to replead the complaint.

10. To be sure, this is the first attempt to replead after the Court's Order and Opinion. Defendants will not suffer any prejudice or undue delay by Plaintiff's amended pleading.

11. The scales of justice tip towards granting leave to amend. Further, leave to amend would not be futile because Plaintiff brought the complaint in conformity with this Court's requirements.

12. In these circumstances, granting leave to amend to cure alleged pleading deficiencies in response to a motion to dismiss is warranted. *See Luce v. Edelstein*, 802 F. 2d 49, 56 (2d. Cir. 1986). Further, **Plaintiff's Response to Defendant's Rule 12(b)(6) Motion to Dismiss sought leave to amend** should the court find the pleadings deficient.

13. **Dismissal with prejudice** of a $220,628.92 insurance claim, absent leave to amend, would be unprecedented under these facts.

Pl.'s Mot. for Leave ¶¶ 4-13 (emphasis added in ¶¶ 4 & 12).

**Memorandum Opinion and Order – Page 42**

Plaintiff's reasons for contending that he should be granted leave to amend his pleadings postjudgment are just as conclusory as the pleadings in his Original and First Amended Complaints.  Moreover, even assuming that Plaintiff was not motivated by bad faith, his lack of diligence and unorganized and haphazard prosecution of his claims in the action have interfered with the court's ability to effectively manage its docket in this case and others pending before it; unnecessarily delayed the resolution of claims and issues raised by the parties in this case; wasted scarce judicial resources by not following the district's Local Civil Rules and the Federal Rules of Civil Procedure and causing the court to direct its attention away from older, complex cases and motions that have been pending for a longer period of time; and caused Defendant to unnecessarily incur litigation expenses prejudgment and postjudgment.  Given Plaintiff's failure to present any adequate explanation for waiting until after entry of the judgment before seeking leave to further amend his pleadings, the court disagrees that that there has been no "undue delay" in this case.

It is not entirely clear what is meant by Plaintiff's assertion that "leave to amend would not be futile because [he] brought the complaint in conformity with this Court's requirements." Pl.'s Mot. for Leave ¶ 11.  Compliance by Plaintiff, after being warned by the court, with the district's Local Civil Rules for motions for leave and the requirement that the proposed filing be submitted is merely procedural and says nothing about the futility of the allegations included in his proposed Second Amended Complaint.  Defendant correctly notes that Plaintiff has yet to explain how he intends to cure the numerous deficiencies identified in their two motions to dismiss and the court's opinion.  In his November 8, 2019 response, Plaintiff took the position that he had pleaded his best case, and that his claims, as pleaded in his First Amended Complaint, were sufficient. Now Plaintiff maintains that the pleadings in his proposed Second Amended Complaint are his "best case."  Pl.'s Mot. for Leave 2 (Doc. 23).

Again, however, Plaintiff has not explained in either his Rule 59(e) motion or Motion for Leave under Rule 15(a) how the allegations in his proposed Second Amended Complaint cure the prior deficiencies identified by the court and Defendant.  Plaintiff, instead, apparently believes that it is the court's or Defendant's responsibility to compare the pleadings in his First Amended Complaint and proposed Second Amended Complaint to determine if, as he asserts, the deficiencies have in fact been cured.  It is not incumbent on the court to educate litigants or their attorneys regarding the law. Doing so, as reflected in this case, unnecessarily disrupts the court's management of its docket and other cases pending before it. *See Reliance Ins. Co. v. Louisiana Land and Expl. Co*., 110 F.3d 253, 258 (5th Cir. 1997) ("District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case"); *Guillory v. Domtar Indus. Inc.,* 95 F.3d 1320, 1332 (5th Cir. 1996) ("It is well established that the district court is entitled [to] manage its court room and docket").  It is not uncommon for pro se litigants to make mistakes in representing themselves. That is not the case here, as Plaintiff is represented by counsel.

Plaintiff also attempts to improperly shift the burden to Defendant by making the conclusory argument that, not only does his "Second Amended Complaint satisf[y] the pleading requirements," but also that: "Remarkably, Defendant's response [to his Motion for Leave under Rule 15(a)] failed to make any arguments that the Second Amended Complaint is deficient." Pl.'s Reply ¶ 6 (Doc. 28). Plaintiff, not Defendant, has the burden, as the movant seeking leave to further amend his pleadings, to establish that allowing him to further amend would not be futile.  Plaintiff has failed to satisfy that burden, particularly in light of the court's discussion and conclusion that he abandoned most of his claims in failing to defend them in response to Defendant's Motion to

Dismiss his First Amended Complaint, and he waived a number of the issues raised by Defendant by not addressing them in his response.

Moreover, as the court explained in its prior opinion, the provision of Rule 15(a)(2) of the Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so requires" is not without limitation.  This is especially true here given Plaintiff's failure to request to amend his pleadings in the event the court disagreed that his claims as pleaded in his First Amended Complaint failed to state plausible claims for relief. Plaintiff contends in his Rule 59(e) motion that he requested leave to further amend his pleadings in responding to Defendant's Motion to Dismiss his First Amended Complaint.  Pl.'s R. 59(e) Mot. ¶ 28. *This argument mischaracterizes Plaintiff's response, and even Plaintiff has since conceded that he did not previously seek leave to further amend his pleadings before the court granted Defendant's Motion to Dismiss his First Amended Complaint.*

In his response, Plaintiff made the following statement: "Plaintiff has met this minimum standard with regard to particularity [under Rule 9(b)]," but "[e]ven assuming arguendo that [he] failed to plead fraud with sufficient particularity, *courts generally will permit leave to amend the complaint to bring it within compliance of the requirements of [Rule 9(b)].*" Pl.'s Resp. ¶ 5 & n.8 (citing *Luce v. Edelstein*, 802 F. 2d 49, 56 (2d. Cir. 1986)).  This is not an express request by Plaintiff to amend his pleadings. It is simply a statement of what courts in the Second Circuit normally do when fraud claims are insufficiently pleaded under Rule 9(b). Of course, opinions by the Second Circuit are not binding on this court, and, in any event, Plaintiff abandoned his fraud claim in his response and subsequently attempted to voluntarily nonsuit it.

Regarding amendment of pleadings, the Fifth Circuit has explained:

> A party who neglects to ask the district court for leave to amend cannot expect to receive such a dispensation from the court of appeals. Rule 15(a) applies

> where plaintiffs "expressly requested" to amend even though their request "was not
> contained in a properly captioned motion paper." A formal motion is not always
> required, so long as the requesting party has set forth with particularity the grounds
> for the amendment and the relief sought. "[A] bare request in an opposition to a
> motion to dismiss—without any indication of the particular grounds on which the
> amendment is sought, . . . does not constitute a motion within the contemplation of
> Rule 15(a)."

*United States ex rel. Willard v. Humana Health Plan of Tex. Inc*., 336 F.3d 375, 387 (5th Cir.

2003) (citations omitted).  The court in *United States ex rel. Willard* concluded that that the district

court did not abuse its discretion by not allowing the plaintiff to amend his complaint because,

among other reasons, he "did not expressly request with particularity the opportunity to amend his

complaint." *Id.*

Like the plaintiff in *United States ex rel. Willard*, the brief statement in Mr. Howley's

response did not "expressly request that [he] be given leave to amend and d[id] not provide any

indication of the grounds on which such an amendment should be permitted."  *Id.* While Plaintiff

has not amended his pleadings as many times as the plaintiff in *United States ex rel. Willard*, he

has failed to establish that allowing him to further amend his pleadings would not be futile under

the circumstances or unnecessarily delay the resolution of this action*, in which there are more

postjudgment filings than prejudgment filings.*

Accordingly, all of the foregoing considerations weigh against granting Plaintiff's

postjudgment motions for leave to amend, as he has not shown entering a judgment on the

pleadings before allowing him to further amend was improper or inconsistent with applicable law

under the circumstances.  The court will, therefore, deny his motions and request to further amend

his pleadings after entry of the judgment in this case.

**IV.    Defendant's Motion for Leave to File Surreply**

The court agrees that some of the matters in Plaintiff's reply exceed the arguments in Defendant's response and could have been contemplated in advance, and included in Plaintiff's motion. Given the court's disposition of Plaintiff's motions, however, it will deny as moot Defendant's Motion for Leave to File Surreply.

**V.    Conclusion**

For the reasons explained, the court **denies** Plaintiff's Emergency Motion to Alter or Amend a Judgment under Rule 59(e) (Doc. 15); **denies** Plaintiff's Motion for Leave to file Second Amended Complaint (Doc. 23); and **denies as moot** Bankers Standard Insurance Company's Motion for Leave to File a Surreply (Doc. 29).

**It is so ordered** this 10th day of March, 2021.

Sam A. Lindsay
United States District Judge